# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ANDREW WAHL,<br><br>    Plaintiff,<br><br>v.<br><br>YAHOO! INC., a Delaware corporation dba RIVALS.COM,<br><br>    Defendant. | Case No. 17-cv-02745-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**<br><br>[RE: ECF 48, 52] |

On November 8, 2018, the Court heard (1) Plaintiff's Motion for Final Approval of Class Action Settlement and (2) Plaintiff's Motion for an Award of Attorneys' Fees, Expenses, and Incentive Award. For the reasons discussed below, the motions are GRANTED.

## I. BACKGROUND

This action arises from Defendant Yahoo! Inc.'s operation of a website called Rivals.com, which allows subscribers to access premium information on college sports and recruiting, including news and message boards for college basketball and football teams. Annual subscribers pay $99.95 per year, and monthly subscribers pay $9.95 per month. Yahoo allegedly violated California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17600, by failing to give statutorily required notice that subscriptions to Rivals.com would renew automatically. While the ARL does not create a private right of action, violation of the ARL can be the basis for a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq. See Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676-77 (9th Cir. 2018). Former plaintiff Andrew Wahl filed this suit in the Santa Clara County Superior Court on March 31, 2017, asserting a

1 single UCL claim on behalf of himself and other subscribers to Rivals.com. *See* Notice of

2 Removal, ECF 1.

3       Yahoo removed the action to federal district court on the basis of diversity of citizenship.

4 *Id.* This Court dismissed the complaint with leave to amend, observing that Wahl – a resident of

5 Missouri – had not alleged that he is "a consumer in this state" as required for standing under the

6 ARL. *See* Order Granting Motion to Dismiss with Leave to Amend, ECF 22. On May 17, 2018,

7 Class Counsel filed the operative first amended complaint ("FAC"), substituting current

8 plaintiff/class representative Yuan Guo ("Plaintiff") in place of Wahl. *See* FAC, ECF 37. Like

9 the original complaint, the FAC asserts a single UCL claim. *See id.*

10       Plaintiff filed a motion for preliminary approval of class action settlement, which was

11 heard on July 12, 2018 and July 16, 2018. *See* Motion for Preliminary Approval, ECF 38; Minute

12 Entries, ECF 41, 42. The Court raised concerns regarding the proposed notice plan and a lack of

13 clarity regarding benefits to the class. Plaintiff filed a 25-page supplemental brief on July 25,

14 2018, explaining how the original settlement agreement, claim form, and class notice had been

15 modified to address the Court's concerns. *See* Supplement to Motion for Preliminary Approval,

16 ECF 43. The Court thereafter granted the motion for preliminary approval and set a fairness

17 hearing for November 8, 2018. *See* Order Granting Motion for Preliminary Approval, ECF 44.

18       Plaintiff subsequently filed the current Motion for Final Approval of Class Action

19 Settlement and Motion for an Award of Attorneys' Fees, Expenses, and Incentive Award. *See*

20 Motion for Final Approval, ECF 52; Motion for Attorneys' Fees, ECF 48. In support of those

21 motions, Plaintiff submitted the declaration of Jennifer M. Keough, Chief Executive Officer of

22 JND Legal Administration ("JND"), the Settlement Administrator. *See* Keough Decl., ECF 55.

23 Ms. Keough describes the dissemination of notice to class members and states that no objections

24 or opt-outs have been received. Keough Decl. ¶¶ 3-8. Plaintiffs also submitted a copy of the

25 Settlement Agreement and Release ("Settlement Agreement"). *See* ECF 54.

26       The Settlement Agreement defines the Settlement Class to mean: "all customers in

27 California who were charged on a recurring basis by Rivals.com for auto-renewal subscriptions

28 entered into between March 31, 2013 and the present." Settlement Agreement ¶ 20, ECF 54.

Class members who do nothing in response to the class notice will receive either 5 months (annual subscribers) or 3 months (monthly subscribers) of free subscription services to Rivals.com. Settlement Agreement ¶¶ 27-29, ECF 54. In lieu of the free subscription services, class members may elect to receive either $20 in cash (annual subscribers) or $10 in cash (monthly subscribers). *Id.* Moreover, Defendant Yahoo has agreed to "modify the subscription page for Rivals.com to present the automatic renewal terms in a clear and conspicuous manner for California customers before a subscription agreement is fulfilled and in visual proximity to the request to consent to the subscription offer." Settlement Agreement ¶ 31, ECF 54. Yahoo also has agreed to pay: attorneys' fees and expenses awarded by the Court, not to exceed a total of $300,000; an incentive award of $5,000 to Plaintiff Yuan Guo if approved by the Court; and the Settlement Administrator's reasonable fees and expenses. Settlement Agreement ¶¶ 33, 34, 47, ECF 54. Yahoo's payment of these amounts will be separate and apart from Yahoo's payment of benefits to the class. *Id.*

**II.     MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

To grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

**A.     The Class Meets the Requirements for Certification under Rule 23**

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

3

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court concluded that these requirements were satisfied when it granted preliminary approval of the class action settlement. *See* Order Granting Motion for Preliminary Approval, ECF 44. The Court is not aware of any new facts which would alter that conclusion. However, the Court reviews the Rule 23 requirements again briefly, as follows.

Turning first to the Rule 23(a) prerequisites, Yahoo has identified 16,746 potential class members, which clearly is sufficient to meet the numerosity requirement. *See* Keough Decl. ¶ 3, ECF 55. The commonality requirement is met because the key issue in the case is the same for all class members – whether Yahoo violated the ARL by automatically renewing subscriptions to Rivals.com without statutorily required notice.

The named Plaintiff's claim is typical of those of the class members, as he is a California resident who purchased an annual subscription to Rivals.com and was charged for automatic renewal of the subscription. *See* FAC ¶¶ 20-23. Although some class members purchased monthly, rather than annual, subscriptions to Rivals.com, both annual and monthly subscribers are encompassed by the class definition. The two types of subscribers are treated the same under the Settlement Agreement except with respect to the benefits each may recover. Typicality requires only that the claims of the class representative is "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). That requirement is satisfied here.

4

Finally, to determine Plaintiff's adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). The record discloses no conflict of interest which would preclude the named Plaintiff from acting as class representative, and Class Counsel has litigated this action vigorously on behalf of the class.

With respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The common question in this case – whether Yahoo violated the ARL by automatically renewing subscriptions to Rivals.com without statutorily required notice – predominates. Given that commonality, and the number of class members, a class action is a superior mechanism for adjudicating the claims at issue.

Accordingly, the Court finds that the requirements of Rule 23 are met and that certification of the class for settlement purposes is appropriate.

**B.     The Settlement is Fundamentally Fair, Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025. Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* (internal quotation marks and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp* ("*Hanlon* factors"). *Id.* Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026-27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).

### 1. Notice was Adequate

The Court previously approved Plaintiff's plan for providing notice to the class when it granted preliminary approval of the class action settlement. *See* Order Granting Motion for Preliminary Approval, ECF 44. Plaintiff has provided a declaration of the Settlement Administrator describing implementation of the approved notice plan. *See* Keough Decl. ¶¶ 3-6, ECF 55. Direct email notice was given to all 16,746 individuals identified by Yahoo as potential class members. Keough Decl. ¶ 3. Of the 4,773 individuals whose emails "bounced" back, 4,272 were sent postcard notice through the United States Mail. Keough Decl. ¶¶ 3-4. The Settlement Administrator also created and maintained a website which provides information to class members. Keough Decl. ¶ 5. The Court is satisfied that the class members were provided with the best notice practicable under the circumstances, and that such notice was adequate.

### 2. Presumption of Correctness

Before discussing the *Hanlon* factors, the Court notes that "[a] presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting *Manuel for Complex Litigation* (Third) § 30.42 (1995)). The settlement in this case occurred after more than a year of litigation, which included exchange of informal discovery and motion practice. *See* Kronawitter Decl. ¶ 16, ECF 43-8; Order Granting Motion to Dismiss with Leave to Amend, ECF 22. Settlement negotiations were conducted at arm's-length with the assistance of a respected mediator, the

6

United States District Court
Northern District of California

Honorable Ronald M. Sabraw, Ret. *See* Sabraw Decl. ¶¶ 2-8, ECF 52-1. The Court concludes that on this record a presumption of correctness applies to the class action settlement.

### 3. *Hanlon* Factors

Turning to the *Hanlon* factors, the Court first considers the strength of the plaintiff's case, weighing the likelihood of success on the merits and the range of possible recovery (factor 1). Plaintiff estimates that the Settlement Agreement will result in total benefits to the class of between $656,700 and $820,875.[1] *See* Supplement to Motion for Preliminary Approval at 6, ECF 43. If Plaintiff were to take this case to trial, he would seek restitution of the full value of fees that were charged to class members when their subscriptions were automatically renewed. *See* FAC Prayer, ECF 37; Kronawitter Decl. ¶ 15, ECF 43-8. While recovery under a full-value model could be greater than recovery under the Settlement Agreement, Yahoo has indicated that it would challenge Plaintiff's full-value model and would litigate the case vigorously. *See* Kronawitter Decl. ¶ 15, ECF 43-8. Thus, it is not at all clear that Plaintiff would prevail at trial or recover more than the benefits guaranteed by the Settlement Agreement. Moreover, Plaintiff would face significant hurdles if the litigation were to go forward, including formal discovery and further motion practice, and therefore he would take on significant risk and expense absent settlement (factor 2).

Given the common questions of fact and law in this case, it is likely that the class would have been certified had the case progressed (factor 3). The settlement confers tangible benefits to the class, as class members have the choice between a cash recovery or several free months of subscription to Rivals.com (factor 4).

Plaintiff acknowledges that little formal discovery has been done (factor 5). However, because Plaintiff's UCL claim is based primarily on the content of the Rivals.com website and the undisputed subscription renewals of class members, it appears that the parties had sufficient information to evaluate the case's strengths and weaknesses (factor 6). Plaintiff and Defendants are represented by experienced counsel, whose views on the settlement are entitled to significant

---

[1] Those figures may be low, as Plaintiff based his calculations on an estimated class size of 16,500, and the actual potential class size is 16,746.

7

weight. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

There is no government participant (factor 7). The class reaction to the settlement is favorable, as there were no objections or opt-outs (factor 8). *See* Keough Decl. ¶¶ 7-8, ECF 55.

Based on the foregoing reasons, and after considering the record as a whole as guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement is not the result of collusion, and the settlement is fair, adequate and reasonable.

Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED.

### III. MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

Plaintiff seeks an award of attorneys' fees in the amount of $285,313.66 and an award of litigation expenses in the amount of $14,686.34, for a total award of fees and expenses in the amount of $300,000. Under the Settlement Agreement, Yahoo has agreed to pay attorneys' fees and expenses, not to exceed $300,000, if awarded by the Court. Plaintiff also seeks an incentive award in the amount of $5,000.

#### A. Attorneys' Fees and Expenses

#### 1. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Because this Court exercises diversity jurisdiction in this case, "state law governs both the right to recover attorney's fees and the computation of their amount." *Collado v. Toyota Motor Sales, U.S.A., Inc.*, 550 F. App'x 368, 368-70 (9th Cir. 2013) (citing *Mangold v. Cal. Public Utilities Com'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)). "In particular, California Code of Civil Procedure § 1021.5 applies to the request for attorney's fees." *Id.* at 370. Section 1021.5 provides for an award of fees "to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public

or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Cal. Civ. Proc. Code § 1021.5.

"Fee awards granted pursuant to § 1021.5 must be calculated using a lodestar analysis." *Collado*, 550 F. App'x at 370. The Court starts with the "lodestar figure, based on the careful compilation of the time spent and reasonable hourly compensation of each attorney involved in the presentation of the case." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004), *as modified* (Jan. 12, 2005) (quotation marks, citation, and alteration omitted). The California Supreme Court has "expressly approved the use of prevailing hourly rates as a basis for the lodestar." *Id.* The lodestar "may be adjusted by the court based on factors including . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Id.* "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Id.*

### 2. Discussion

The Court has no difficulty concluding that Plaintiff is a successful party within the meaning of § 1021.5. "The California Supreme Court has 'taken a broad, pragmatic view of what constitutes a successful party'" under § 1021.5, defining the term "to mean 'the party to the litigation that achieves its objectives.'" *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. 2007) (quoting *Graham*, 34 Cal. 4th at 565, 571). "Under California law, it is undisputed that relief obtained through a settlement may qualify a plaintiff as the prevailing party." *Id.* (quotation marks, citation, and alteration omitted). Plaintiff achieved his objectives in obtaining both a tangible recovery for each class member but also modification of the subscription page for Rivals.com to present the automatic renewal terms in a clear and conspicuous manner. The terms of the Settlement Agreement are approved by the Court herein, and the Court retains

jurisdiction to enforce those terms. "The judicially-sanctioned and court-enforceable settlement agreement in this case renders [Plaintiff] a 'successful party.'" *Skaff*, 506 F.3d at 844.

The Court also finds that the three statutory prerequisites for an award of attorneys' fees under § 1021.5 are satisfied. First, the Settlement Agreement confers a significant pecuniary benefit on a large class of individuals (free subscription services or cash), and a nonpecuniary benefit on the general public (modification to Rivals.com subscription page to present the automatic renewal terms in a clear and conspicuous manner). Second, "the necessity and financial burden" requirement is satisfied because "the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his . . . individual stake in the matter." *Davis v. Farmers Ins. Exch.*, 245 Cal. App. 4th 1302, 1329 (2016), *as modified on denial of reh'g* (Apr. 21, 2016), *review denied* (June 29, 2016). "The purpose of an award of attorney fees pursuant to section 1021.5, is to encourage suits that enforce common interests of significant societal importance, but which do not involve any individual's financial interests to the extent necessary to encourage private litigation to enforce the right." *Id.* (quotation marks and citation omitted). Here, no government agency brought action against Yahoo, and the cost of litigation was significantly higher than Plaintiff's potential individual recovery. Third, Yahoo has agreed to pay Class Counsel's attorneys' fees and costs, up to a cap of $300,000, separate and apart from the benefits to the class under the Settlement Agreement.

Finally, the Court concludes that the fees and expenses requested by Plaintiff are reasonable under a lodestar analysis governed by California law. Plaintiff has submitted declarations and billing records from both law firms that represented the class, Horn Aylward & Bandy, LLC, located in Kansas City, Missouri, and Ogloza Fortney LLP, located in San Francisco, California. Those declarations and records document more than 700 hours litigating this action and a collective lodestar of approximately $320,000. *See* Kronawitter Decl. ¶¶ 16-20, ECF 48-3; Ogloza Decl. ¶¶ 10-14, ECF 48-4; Billing Records, ECF 49. Class Counsel's rates, which range from $250 to $675, are consistent with prevailing rates in both Kansas City, Missouri and this district. *See* Kronawitter Decl. ¶¶ 22-24. Plaintiff does not request a multiplier, and in fact he seeks only $285,313.66 in fees, substantially less than the $320,000 lodestar. Plaintiff also

1 requests expenses in the modest amount of $14,686.34, which is supported by declarations of

2 Class Counsel. *See* Kronawitter Decl. ¶¶ 25-26, ECF 48-3; Oglaza Decl. ¶¶ 17-18, ECF 48-4.

Based on this record, Plaintiff's request for an award of attorneys' fees in the amount of $285,313.66 and an award of litigation expenses in the amount of $14,686.34, for a total award of fees and expenses in the amount of $300,000, is GRANTED.

### B. Incentive Award

Plaintiff requests an incentive award of $5,000. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted). "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). The Court finds that the requested award of $5,000 is appropriate in this case, and that request is GRANTED.

### IV. ORDER

(1) Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED.

(2) Plaintiff's Motion for an Award of Attorneys' Fees, Expenses, and Incentive Award is GRANTED. Plaintiff is awarded attorneys' fees in the amount of $285,313.66, expenses in the amount of $14,686.34, and an incentive award in the amount of $5,000.

(3) Without affecting the finality of this Order and accompanying Judgment in any way, the Court retains jurisdiction over implementation and enforcement of the Settlement Agreement until each and every act agreed to be performed by the parties pursuant to the Settlement Agreement has been performed; any other actions necessary to conclude the Settlement and to administer, effectuate, interpret, and monitor compliance with the provisions of the Settlement Agreement; and all parties to this action and Settlement class members for the purpose of implementing and enforcing the Settlement Agreement.

1  (4) The Settlement Agreement sets certain deadlines for distribution of settlement funds and payment of attorneys' fees.  Within 21 days after the distribution of the settlement funds and payment of attorneys' fees, the parties shall file a Post-Distribution Accounting in accordance with this District's Procedural Guidance for Class Action Settlements.

Dated: November 15, 2018

_____
BETH LABSON FREEMAN
United States District Judge